IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DAVID J. WOOD, TRUSTEE OF THE
RICHARD T. SMITH FAMILY TRUST #2                                    PLAINTIFF

v.                          No. 4:03CV00800 GH

REASSURE AMERICA LIFE INSURANCE
COMPANY, A SUCCESSOR BY MERGER OF
THE MIDLAND LIFE INSURANCE COMPANY                                  DEFENDANT

**ORDER**

On October 6, 2003, plaintiff filed a diversity complaint for breach of contract, statutory premium refund and bad faith arising out of a $5 million life insurance policy issued on the life of M. David Howell who died on October 23, 2002. The policy owner of Policy No. Z74861 was Richard T. Smith who was also the policy beneficiary. Subsequently, ownership of the policy was transferred to plaintiff who was also then named as beneficiary.

Defendant filed a motion for summary judgment, on November 18, 2004, supported by brief, exhibits and a separate statement of undisputed facts. It asserts that it is entitled to summary judgment as a matter of law on both the complaint and its counterclaim as Howell did not meet certain conditions precedent to insurance taking effect, he obtained the insurance policy by fraudulent means and the policy is void as a matter of public policy. Defendant also contends that the claim for punitive damages based on bad faith must be dismissed.

Defendant asserts that no valid contract of insurance ever existed between the parties as Howell and Smith did not comply with the condition precedent that no insurance would take effect

until the statements and answers that they gave to all parts of the application remain substantially correct when Howell's statements in the application concerning his financial situation and medical history were not substantially correct in August of 2000 or at any time thereafter.

It also argues that Arkansas law permits recession of a fraudulently obtained insurance policy since the acts of Howell rendered the contract void *ab initio*. Defendant states that it has met the five elements of fraud in that there was a false representation of a material fact, knowledge that the representation was false, an intent to induce action or inaction in reliance upon the representations, justifiable reliance by defendant on the representation, and damage as a result of the reliance. It argues that Howell and Smith made numerous false representations of material fact as Howell lied about his financial condition when he stated that his annual income was in excess of $2 million and his net worth was $25 million while he was actually losing over $3 million per year and his true net worth at the time of the application was negative $18,270,000 thereby misstating his annual income by $5 million per year and inflated his net worth by $47,270,000; he lied about his medical history when he indicated that he had not been treated for anxiety or depression in the previous ten years, was not receiving medical treatment or taking prescription medication, and had not consulted a psychiatrist when Howell had been diagnosed with depression in 1999, began treatment with a psychiatrist, had been taking anti-depressants, hypnotics, and anti-anxiety medications for a year by the time he made application; and he represented that he did not have any operational limitation on his FAA license medical certificate and had a valid multi- and instrument-rated certificate when on February 1, 2001, he landed in a field near Brinkley and besides the FAA's investigation revealing that he had misrepresented what happened during the landing, his blood tested positive for

nefazodone – an antidepressant – at which time the FAA subpoenaed his medical records and learned of his drug use.

Defendant continues that Howell knew his representations were false as did Smith as the monthly investment accounts shows losses fo thousands of dollars per moth, Smith invoked his Fifth Amendment right against self-incrimination, and Howell knew his medical misrepresentations were not true. It asserts that intent can be inferred from the differing lies told by Howell at the SMAE time and both Howell and Smith gave false answers to material questions on the application. Defendant contends that it actually relied upon the representations not only in the financial status and medical history by Howell and Smith, but obtained various records and would not have issued the policy if it has known of the lies.

Turning to its argument that the policy is void as violating public policy, defendant points to statutes criminalizing making a false or fraudulent representation in an insurance application. It also argues that there are no facts in this case to support a finding of consciously oppressive, malicious or deceitful actions by defendant is defendant examining the representations on Smith and Howell's applications, spending time investigating the medical and financial histories and taking depositions to unravel the fraudulent financial dealings and reviewing the medical history.

On December 8th, plaintiff filed a response, brief, controverting statement and exhibits stating that virtually every fact material to defendant's fraud claim is disputed. He contends that the policy was voidable only during and rescission for fraud is inapplicable after the contestable period has passed. the two-year contestable period.

Plaintiff asserts that there are genuine issues as to whether any of the representations as to Howell's income and net worth were false and that defendant should have requested copies of tax

returns. He continues that records were in defendant's predecessor as to medications and treatments he was receiving and that updated records should have been ordered in 2000. Plaintiff also takes issue regarding the FAA license.

He contends that Howell and Smith only agreed that the information was true and complete to the best of their knowledge and belief and Smith did not even sign some of the documents. Plaintiff relies in part on the testimony of the current administrator that she did not believe that Howell's business turned into any kind of fraudulent scheme until shortly before his death and that he had an exaggerated belief in his own abilities as well as Smith stating that he had no inkling of any problem until October 2002. He also points to Howell executing an unlimited medical authorization with which defendant could have obtain all records.

Plaintiff further questions proof or actual or constructive fraud, whether defendant reasonably relied upon the information of Howell and Smith considering the documents in defendant's own file concerning his drugs and treatment for anxiety, his referral to a psychiatrist, and how defendant should have requested tax returns. He takes issue as to whether the policy would have been issued if the "truth" had been known in light of the dispute as to the underwriting guidelines.

In addition, plaintiff argues that there is no casual relation between any representation regarding Howell's sue of drugs and his death especially in light of the evidence that Howell's death was accidental and the alleged misrepresentation realign to income and net worth again are not related to his accidental death. He counters that Arkansas public policy is not violated due to the incontestibility statute at the time.

Turning to bad faith, plaintiff relies on the contestable period having expired, defendant conducted a lengthy investigation after the claim was made to justify denial fo the claim, defendant singled the claim out for special handling due to the publicity Howell's death generated.

Defendant filed its reply on January 10th pointing out that this Court ruled on December 10th that defendant had a right to contest the policy for fraud and plaintiff has not come forward with any evidence to refute defendant's proof of the Smith-Howell fraud that Howell was worth $25,000,000+ and had an annual income in excess of $2,000,000; he represented on numerous occasions that he had not received medical treatment since the summer of 1999, had not been treated for depression, and was not under the care of a psychiatrist; and he was a validly licensed pilot. It continues that the policy contained a condition precedent requiring that all statements and answers in all parts of the application remain substantially correct or no insurance coverage would take effect and it has been established that the application was replete with lies. In the alternative, defendant asserts that there is no disputed material fact concerning Howell's fraud. It stresses that plaintiff has not brought forward a specific fact that the responses on the application were material and Hanson's knowledge cannot be imputed since he was Howell and Smiths insurance agent; plaintiff's suggestion that Howell made an innocent misrepresentation and lacked subjective intent is ridiculous since those representation were objectively false; it is entitled to the inference that Howell intended to induce reliance and the questions were objective and Howell would have known that misstated his net worth by $40 million; plaintiff has not presented any evidence to rebut that defendant would not have issued the policy if it possessed true fact as to Howell's financial and medical situation and it has produced for inspection its entire underwriting manual and provided plaintiff's counsel with copies of all relevant portions; and that defendant will suffer damages if it forced to pay on the policy.

Defendants counters that it does not need to prove a causal connection as there are three independent grounds on which misrepresentation will prevent recovery on a policy and, in any case, defendant has shown the relationship. It continues that plaintiff has ignored its public policy argument and plaintiff's bad faith claim rest entirely on the fact that defendant has not paid the claim which is not sufficient when this Court and two others have determined that defendant has a right to challenge the Howell policy for fraud in the procurement.

Plaintiff filed a motion on January 11th to strike defendant's reply as untimely and premature until discovery issues have been resolved; a supplemental motion in limine; or, alternatively, for additional time to respond. The Court will not strike the reply or grant additional time to file a sur-reply. The Court will deal with the supplemental motion in limine in the context of other motions filed on those issues and so finds that portion of the motion moot.

On April 21st, plaintiff filed a supplemental response providing a copy of the February 1st order in <u>Bailey v. Reassure America Life Ins. Co.</u>, 4:03CV947, denying a similar motion for summary judgment filed by Reassure by finding an issue of fact to be decided by the jury with respect to whether defendant relied upon the alleged misrepresentation made on the application as opposed to relying upon defendant's own investigation.

Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2512 (1986). The non-moving party may not just rest upon his or her pleadings, but must set forth specific facts showing

that there is a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986); Civil Procedure Rule 56. However, "[w]hen considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Court has carefully combed the mountain of exhibits presented by the parties in light of their arguments. The Court agrees with Judge Wright's analysis that plaintiff has come forward with evidence that defendant "approved Howell's application[] for life insurance based on its own independent investigations rather than Howell's representations" thereby creating a fact question for the jury to resolve. The Court is further persuaded that the jury's factual resolutions are also needed regarding defendant's public policy argument.

Defendant has cited the case of Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc., 320 F.3d 838, 844 (8th Cir. 2003) which affirmed this Court grant of summary judgment on a bad faith claim as set out below:

> We agree with the district court that summary judgment was appropriate in this situation under the principles announced in Baker v. Safeco Ins. Co. of Am., 175 F.3d 618, 619-20 (8th Cir. 1999), and State Auto Property & Cas. Ins. Co. v. Swaim, 338 Ark. 49, 58, 991 S.W.2d 555, 560-61 (1999). Arkansas law considers an insurance company's actions to constitute bad faith only if they are "dishonest, malicious, or oppressive." Aetna Casualty & Surety Co. v. Broadway Arms Corp., 281 Ark. 128, 133, 664 S.W.2d 463, 465 (1984). State Auto explained:
>
>> Examples of cases where we have found substantial evidence of bad faith include where an insurance agent lied by stating there was no insurance coverage; aggressive, abusive, and coercive conduct by a claims representative, which included conversion of the insured's wrecked car; and where a carrier intentionally altered insurance records to avoid a bad risk.
>
> 338 Ark. at 58, 991 S.W.2d at 561 (citations omitted). In each of these instances, the insurance company's state of mind was "characterized by hatred, ill will, or a spirit of revenge." See id., 338 Ark. at 59, 991 S.W.2d at 561.

> While we acknowledge that Phoenix may have "dragged its feet in paying claims and disputed other claims," this "does not constitute substantial evidence of bad faith." Id. Furthermore, we believe that Mr. Geil's "threat" in the August 9 letter was neither malicious nor dishonest as relevant Arkansas cases use those terms. As we have already indicated, we have significant reservations about whether the helicopter was operated in compliance with applicable FAA regulations, and thus Phoenix's reliance on a policy exclusion in these circumstances cannot be described as unreasonable, much less as manifesting bad faith. We conclude, as a matter of law, that Phoenix did not exhibit the kind of "hatred, ill will, or ... spirit of revenge" that Arkansas law requires as a predicate for a recovery for bad faith. We therefore affirm the grant of summary judgment against Southern Pine on its bad-faith claim.

See also, ARLD § 24:4 (5th ed.) which states, in part:

> The cause of action [bad faith] cannot be asserted on a denial of liability, an offer to compromise a claim, or an error of judgment when such acts are grounded in good faith. Mere refusal by the insurer to pay a claim when a valid controversy exists concerning liability does not support a bad faith claim. Even if a controversy over the existence of a claim is the result of negligence or gross ignorance by the insurer, bad faith is not present. Nor does confusion, delay in paying claims, or bureaucratic red tape demonstrate malice or constitute bad faith. The insured bears a heavy burden in establishing this cause of action. In other words, although the tort is denominated as bad faith, much more than "bad faith" is required to establish the cause of action. [Footnotes omitted.]

While the Court is aware that Judge Urbom denied defendant's motion for summary judgment on the punitive damages claim in Mays v. Reassure America Life Insurance Co., 4:03CV00209 WKU, the Court notes that decision was rendered by the May 6 and 11, 2004 orders when he found that it was too early to resolve the issue because not all the facts were known as to whether the insurer acted in bad faith and before he ruled by August 9, 2004 order that the similar policy there was vulnerable to attack for fraud in the procurement.[1]

Here, the Court, through the December 10th order, has found that the policy is contestable for fraud thereby rendering Terry's opinion that it was unreasonable to deny the claim because the contestable period had expired at the time Howell's death more than two years after issuance of the

---

[1] In the May 6, 2004 order denying summary judgment, Judge Urbom stated that "[i]t is true that there is much evidence of fraudulent conduct on the part of Howell."

policy inapplicable.  In addition, the Court once again agrees with Judge Wright that defendant has demonstrated a good faith defense of fraud in the procurement of the policy.  Under these circumstances, defendant is entitled to summary judgment on the claim for punitive damages based on bad faith.

Accordingly, defendant's November 18th motion (#113) for summary judgment is hereby granted in part as to the claim for punitive damages based on bad faith and denied in part as to its argument that Howell did not meet certain conditions precedent to insurance taking effect, he obtained the insurance policy by fraudulent means and the policy is void as a matter of public policy.  The portions of plaintiff's January 11th motion (#146-1 and #146-3) are denied as to striking the reply and for additional time.  The portion of plaintiff's January 11th motion (#146-2) regarding the supplemental motion in limine will be handled in the context of the separate motions filed on those issues and so is considered moot at this point.

IT IS SO ORDERED this 29th day of September, 2005.

*George Howard Jr*
UNITED STATES DISTRICT JUDGE